UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KING'S WELDING & FABRICATING, INC., | ) ) ) | CASE NO. 5:11CV1792 |
| PLAINTIFF/APPELLANT, | ) ) | JUDGE SARA LIOI |
| vs. | ) ) ) | |
| GLENN RICHARD KING, JR., | ) ) ) | **MEMORANDUM OPINION** |
| DEFENDANT/APPELLEE. | ) | |

Before the Court is an appeal filed by plaintiff/appellant, King's Welding & Fabricating, Inc. ("KWF"), from a bankruptcy court order entered on July 14, 2011 in Adv. Proc. 10-6099-rk (Bankr. N.D. Ohio), granting summary judgment in favor of defendant/appellee, Glenn Richard King, Jr. ("Rick King"). KWF filed its appellant's brief (Doc. No. 6); Rick King filed his appellee's brief (Doc. No. 9); and KWF filed its reply brief (Doc. No. 10). The parties also designated portions of the bankruptcy court record for inclusion in the record on appeal. (*See* Bankr. Doc. Nos. 47, 50.) For the reasons set forth herein, the decision of the bankruptcy court is **AFFIRMED** and this appeal is **DISMISSED**.

**I. BACKGROUND**

This case has a history that began well before the bankruptcy filings. The Court will recite herein enough of that history to provide an appropriate context for the discussion.

Rick King is the former Vice President of KWF, having worked for KWF from the 1970s until October 1, 2005. KWF was owned by Rick King's parents, Glenn Richard King,

Sr. ("Dick King") and Florence Jane King ("Jane King"). Dick and Jane King are now divorced and Dick King is the sole owner of KWF.

Rick King claims he was primarily responsible for KWF's success, beginning in 1973 when, while home on a 30-day military leave, he converted his parents' horse barn into a welding shop. After leaving the military, Rick King began working full time for KWF; he had the understanding that he would someday own KWF.

In 1995, Dick King retired. From 1995 to 2004, Rick King ran all aspects of the business, without need for the owners' day-to-day approval of his actions or decisions. During that time, Rick King initiated KWF's relationship with a major client, PCC Airfoils. Also during that time, KWF's income grew from $500,000 to $2,248,313.

On September 27, 2004, Dick King suddenly decided to return to active management of KWF. Upon his return, he allegedly fired key employees and alienated others, causing them to quit. As a result, it became difficult, if not impossible, for KWF to meet its welding and fabrication obligations to PCC Airfoils. Rick King claims that he tried unsuccessfully to talk about this problem with his father, with whom he had a poor relationship. Rather than lose the lucrative PCC Airfoils' contract, in July, 2005, Rick King, unbeknownst to Dick King, formed ANJ Contracting LLC ("ANJ") to fulfill the PCC Airfoils contracts. After Dick King discovered this, he allegedly forced Rick King out of KWF in September 2005.

On October 5, 2005, KWF filed a complaint in the Carroll County Court of Common Pleas against Rick King and ANJ, seeking injunctive relief and damages based on claims of breach of fiduciary duty and/or breach of employment contract, misappropriation of trade secrets, tortious interference with business relations, and fraud ("the Carroll County Action"). Rick King filed a third party complaint against Dick King for breach of contract,

2

promissory estoppel and unjust enrichment. On October 16, 2007, with leave of court, KWF amended the complaint to add Rick King's wife, Julie, as a defendant, along with a new claim of conversion. Discovery and motion practice proceeded. On April 18, 2008, the trial court ruled on the motions for summary judgment filed by KWF and Dick King. The trial court denied Dick King's motion, finding material facts in dispute, but partially granted KWF's motion. Summary judgment was granted with respect to KWF's claims for breach of contract/duty of good faith and conversion (without resolving damages, which remained for trial), but was denied with respect to tortious interference, misappropriation of trade secrets, and fraud. The case was set for trial beginning April 21, 2008; the trial date was later continued to June 28, 2008.[1]

Ultimately, Rick King was unable to pay his attorneys in the Carroll County Action. They withdrew their representation, took a $248,688 judgment against him in February 2010, and began proceedings in aid of execution in July 2010. *See Buckingham, Doolittle & Burroughs v. Glen R. King, Jr.*, Case No. 2009CV04288 (Stark Cty. Common Pleas). No new counsel ever appeared on behalf of Rick King in the Carroll County Action and the case never went to trial on the remaining issues before the filing of Rick King's bankruptcy petition.

On August 11, 2010, Rick King filed a no-asset, chapter 7 bankruptcy petition. As a result, on August 24, 2010, the Carroll County Action was stayed, without a final judgment having been issued.

On October 14, 2010, KWF filed an adversary proceeding seeking a determination regarding dischargeablility of debts. On December 6, 2010, KWF filed a motion to abstain as to certain claims, to hold the case in abeyance pending resolution of the Carroll

---

[1] The copy of the state court complaint supplied as part of the bankruptcy court record is actually the amended complaint filed on October 16, 2007. The original complaint has not been supplied.

County Action, and to lift the stay to permit that action to proceed. On March 29, 2011, the bankruptcy court denied this motion. There was no appeal from this order. Rick King moved for summary judgment and, on July 14, 2011, Bankruptcy Judge Russ Kendig issued a Memorandum of Opinion and an Order granting the motion. The adversary proceeding was dismissed and this appeal followed.

## II. DISCUSSION

**A.  Standard of Review**

Under Bankr. R. 7056, Fed. R. Civ. P. 56 governs motions for summary judgment in adversary proceedings in bankruptcy court. A grant of summary judgment by the bankruptcy court is reviewed *de novo*, using the same Rule 56 standard as used by the bankruptcy court. *Williams v. Mehra,* 186 F.3d 685, 689 (6th Cir. 1999) (en banc). Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). When reviewing a motion for summary judgment, the evidence, all facts, and any inferences that may be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). To prevail, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank,* 916 F.2d 337, 342 (6th Cir.1990). A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v.*

4

*Catrett,* 477 U.S. 317, 322 (1986). Under this standard, the bankruptcy court's legal determinations are reviewed *de novo*, *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 433 (6th Cir. 2004), and the bankruptcy court's "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous . . . ." Bankr. R. 8013.

**B.      Analysis**

KWF raises three issues on appeal: (1) whether the bankruptcy court erred by failing to give any weight or consideration to the underlying state court decision; (2) whether the bankruptcy court decided issues not relevant to the question of dischargeability; and (3) whether summary judgment was appropriate when considering the facts in the light most favorable to KWF. This Court will address the first issue separately and the remaining two, which are related, together.[2]

**1.      Whether the bankruptcy court erred by failing to give any weight or consideration to the underlying state court decision**

Relying on *Birgel v. Bd. of Comm'rs of Butler Cnty.*, 125 F.3d 948 (6th Cir. 1997), KWF argues that Sixth Circuit precedent "confirms that court's distaste for attempts to avoid the consequences of adverse judgment rendered with detailed findings of fact and conclusions of law by reasserting such claims in a different forum." (Appellant's Brief at 17, citing *Birgel*, 125 F.3d at 952[3] ("we will not permit a plaintiff to abandon his failing state court suit and file a virtually identical suit in federal court in hopes of achieving a more favorable result.").) In KWF's view, Rick King was "clearly forum shopping" because he had "received an

---

[2] Unfortunately, appellee did not respond to any of these individual arguments, instead filing a brief that simply reargues the merits of the summary judgment motion and asserts that this is "sham litigation."

[3] Appellant did not give a pinpoint citation, requiring the Court to search for it. In fact, appellant gave virtually no pinpoint citations anywhere in its brief. Counsel is placed on notice that, when citing cases for a particular proposition, pinpoint citations are expected.

adverse ruling in the State Court and the only way to extricate himself from the state court ruling was to file bankruptcy." (*Id*. at 18.) "He [then] managed to convince the Bankruptcy Judge that the State Court rulings against him had no effect; however that now leaves this matter with conflicting judgments in two different forums." (*Id*.). KWF criticizes the bankruptcy court's conclusion that collateral estoppel does not apply in this case because there was no "final judgment" in the Carroll County Action.

KWF's reliance on *Birgel* is misplaced. Rick King was not the plaintiff in the Carroll County Action. Therefore, he cannot be said to have "abandon[ed] his failing state court suit" by filing a petition in bankruptcy more than two years after a partial ruling in the Carroll County Action in which he was the defendant.[4] Rick King's bankruptcy petition bore no relationship to the pleadings filed in the Carroll County Action and, therefore, Rick King's bankruptcy petition cannot be viewed as "a virtually identical suit in federal court" aimed at "achieving a more favorable result." To describe Rick King's bankruptcy filing as "forum shopping," relying on the above-quoted language from *Birgel*, is seriously misguided.

KWF also challenges the bankruptcy court's reliance on *Glidden Co. v. Lumbermens Mut. Cas. Co.*, 112 Ohio St. 3d 470 (2006) for the proposition that collateral estoppel does not apply. In determining the effect, if any, of the summary judgment ruling in the Carroll County Action, the bankruptcy court stated: " 'The doctrine of issue preclusion, also known as collateral estoppel, holds that a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies,

---

[4] Although Rick King had filed a third-party complaint against Dick King as part of the Carroll County Action, that complaint was never resolved. Dick King's summary judgment motion was denied, so there was no adverse ruling for Rick King to escape by filing for bankruptcy.

whether the cause of action in the two actions be identical or different.' " (7/14/11 Bankr. Opinion at 4, quoting *Glidden*, 112 Ohio St. 3d at 478.). In *Glidden*, a grant of partial summary judgment was never memorialized by a final order and was eventually nullified by way of a subsequent settlement and dismissal. KWF argues that the Carroll County Action "is still pending" and "the only reason [it] did not proceed to final judgment was the bankruptcy filing of [Rick King]." (Appellant's Brief at 18-19.) KWF asserts that it was an unwarranted extension of *Glidden* to afford no collateral effect to the findings in the Carroll County Action and to give those findings no weight whatsoever. Relying on *Johnson v. Cleveland City Sch. Dist.*, No. 94214, 2011 WL 2409901, at *5-6, *8 (Ohio Ct. App. June 9, 2011), KWF argues that, even though there was no actual final judgment in the Carroll County Action, there was a decision "on the merits" and the findings of the state court judge are now the "law of the case." In KWF's view, Rick King "had a full and fair opportunity to litigate these matters [in the Carroll County Action] and he should not have been allowed 'another bite at the apple' in [the bankruptcy] forum." (Appellant's Brief at 19, footnote omitted.)[5]

This Court does not find fault with the bankruptcy court's reliance on *Glidden* in its discussion of collateral estoppel. The Sixth Circuit has held that "the application of collateral estoppel in a nondischargeability action depends upon whether the applicable state law would give collateral estoppel effect to the judgment." *The Spring Works, Inc. v. Sarff (In re Sarff)*, 242

---

[5] Some of KWF's arguments border on challenges to the bankruptcy court's order of March 29, 2011, denying KWF's motion to abstain. This order was not appealed and it is improper to attempt to challenge it now. That said, the order properly applied a six-part test for discretionary abstention set forth *In re Parke Imperial Canton, Ltd.*, 177 B.R. 544, 549 (Bankr. N.D. Ohio 1994), and concluded that all but one of the six factors weighed in favor of the bankruptcy court retaining jurisdiction and the one factor that weighed in favor of abstention (i.e., the order in which the courts obtained jurisdiction) was outweighed by all the others. The bankruptcy court properly concluded that both fora were convenient to the parties; litigating the matter in bankruptcy court would avoid piecemeal litigation; the bankruptcy court, unlike the state court, had jurisdiction to decide all issues in the case; the source of law for the issue of dischargeability is federal bankruptcy law; and, the state court, unlike the bankruptcy court, would be unable to protect the debtor's rights under the bankruptcy code. (3/29/11 Bankr. Order, Bankr. Doc. No. 28.)

B.R. 620, 624 (B.A.P. 6th Cir. 2000) (citing *Bay Area Factors v. Calvert (In re Calvert)*, 105 F.3d 315 (6th Cir. 1997)). Therefore, the bankruptcy court did not err in relying on Ohio case law to determine whether collateral estoppel applied.[6] *Glidden* categorically states that "[t]he doctrine of collateral estoppel cannot be invoked when there is no final order." 112 Ohio St. 3d 470, Syllabus ¶ 2. However, given its distinguishable factual and procedural posture, *Glidden* may not have been the strongest case authority.

More directly on point for determining the collateral effect, if any, of the summary judgment ruling in the Carroll County Action is *Chef Italiano Corp. v. Kent State Univ.*, 44 Ohio St. 3d 86 (1989), which held, under a factual scenario materially similar to the instant case, that "[a]n order of a court is a final, appealable order only if the requirements of both [Ohio] Civ. R. 54(B), if applicable, and R.C. 2505.02 are met." *Id.*, Syllabus. In *Chef Italiano*, there was a four-count complaint filed against "three specifically identifiable sets of defendants […]." 44 Ohio St. 3d at 86. All four counts were leveled against one set of defendants (referred to collectively as "Testa"), three against the second set ("Brokers"), and two against the third set ("Kent State"). Testa, Brokers, and Kent State each filed a summary judgment motion. The trial court issued an order granting summary judgment to Testa on the first two counts of the complaint. It included in the order that there was "no just reason for delay." About a week later, during a hearing, the trial judge indicated that he would "put an order on" dismissing counts one and two against *all* defendants, but he never actually did. About a month later, he granted Kent State's motion for summary judgment on counts one and two, but did not include the "no just reason for delay" language, even though the ruling effectively eliminated Kent State, who had

---

[6] By contrast, the *Johnson* opinion from the Eighth District Court of Appeals of Ohio, relied upon by KWF, was actually applying the *federal* law of res judicata. Therefore, it is inapplicable here.

not been included in counts three and four of the complaint. Appeals were taken from both summary judgment rulings; the appeals were consolidated and later dismissed because the corporate appellants were unrepresented by counsel. The Ohio Supreme Court allowed a motion to certify the record, but declined to address the actual issue raised on appeal (i.e., whether a corporate officer not authorized to practice law had authority to file a notice of appeal on behalf of the corporation), concluding on its own motion that it lacked jurisdiction to hear the appeal because there was no final appealable order of the trial court. It reasoned that, although the first summary judgment order included "no just reason for delay" language, "it was *not* a final order" since it "did not *determine* Chef Italiano's action against Testa because two of Chef Italiano's claims against Testa remained outstanding[,]" and it "did not *prevent* Chef Italiano from obtaining a judgment against Testa on [the] two [remaining] claims." *Id.* at 89 (emphases in original). The court reached the same conclusion with respect to Brokers. Finally, the court determined that the second summary judgment order, granting judgment in favor of Kent State on both claims against it, "though final [under Ohio Rev. Code § 2505.02], [was] not appealable [under Ohio Civ. R. 54(B)]" because it "did not expressly determine that there is 'no just reason for delay[.]" *Id*.

In the instant case, the situation is similar to that in *Chef Italiano* as it related to Testa and Brokers. At the time Rick King's bankruptcy petition was filed, the summary judgment ruling in the Carroll County Action had not yet resolved KWF's or Dick King's action against Rick King, ANJ, or Julie King because there were still claims and issues (including damages) outstanding. Further, the ruling did not *prevent* KWF or Dick King from obtaining judgment. There was still a need for a trial. In addition, the ruling did not *determine* Rick King's third-party claims and did not *prevent* him from obtaining judgment. Finally, and importantly,

9

the summary judgment ruling in the Carroll County Action did not contain the "no just reason for delay" language required by Rule 54(B).[7] *See Hall v. Gibson Greetings, Inc.*, 971 F. Supp. 1162, 1165 (S.D. Ohio 1997) (" 'Absent a Civ. R. 54(B) certification that there is no just reason for delay, the summary judgment remained an interlocutory order because it was subject to revision by the trial court while the liability claim remained pending.' ") (quoting *Sparks v. Edingfield*, No. 94-CA-78, 1995 WL 141625, at *1 (Ohio Ct. App. Mar. 31, 1995)).[8]

Accordingly, the bankruptcy court did not err in deciding, under Ohio law, that the summary judgment ruling in the Carroll County Action had no collateral estoppel effect on the adversary proceeding.

> 2. **Whether the bankruptcy court decided issues not relevant to the question of dischargeability and**
>
> 3. **Whether summary judgment was appropriate when considering the facts in the light most favorable to KWF**

---

[7] In fact, the ruling could not contain such language because the entirety breach of contract/duty of good faith and conversion claims had not been adjudicated as the issue of damages was still outstanding.

[8] The court in *Hall* also distinguished *Employees Own Fed. Credit Union v. City of Defiance,* 752 F.2d 243 (6th Cir. 1985). In *Employees Own*, plaintiff brought an action in state court alleging that its constitutional rights were violated when defendants failed to extend water service to a building plaintiff was interested in purchasing that was outside the city limits. On defendants' motion to dismiss for failure to state a claim, the trial court, in "a detailed memorandum opinion setting forth findings of fact and conclusions of law," *id*. at 244, concluded that there was "no property interest of the plaintiff impinged by the refusal of the city to [extend] its water to the plaintiff's property." *Id*. (quoting from the state court opinion). The trial court did not enter immediate judgment, but granted plaintiff twenty days to file an amended complaint. Rather than amending, plaintiff dismissed the action and refiled it in federal court under 42 U.S.C. § 1983, making the same claim as in state court. Defendants moved for summary judgment. Relying on the Restatement (Second) of Judgments § 13 (1982), and finding that the state court had issued its detailed opinion based on pretrial affidavits, depositions, and trial briefs, the Sixth Circuit concluded that the state court decision was "sufficiently firm to be accorded conclusive effect." 752 F.2d at 245 (internal quotation omitted). In *Hall*, however, the court noted that *Employees Own* "involved a detailed memorandum dismissing the plaintiff's *only* claim[,]" with "the only action remaining for the court to conclude the case [being] a journal entry of judgment." 971 F. Supp. 2d at 1165 (emphasis added). The instant case is similarly distinguishable from *Employees Own*. In the Carroll County Action, following the summary judgment ruling, there were *several* issues that remained for trial on the merits, a trial that never occurred in the more than two years between the summary judgment ruling and the filing of Rick King's bankruptcy petition, which resulted in a stay of the Carroll County Action.

On October 14, 2010, KWF filed its "Complaint to Determine Dischargeability of Debts." KWF's adversary proceeding was grounded on 11 U.S.C. § 523(a)(2), (a)(4), and (a)(6), which provide exceptions to discharge in bankruptcy. This Court notes, however, that KWF never filed a proof of claim in the debtor's Chapter 7 bankruptcy proceeding, as evidenced by the complete lack of a Claims Register in the bankruptcy case. Therefore, it is not entirely clear what "debt(s)" KWF sought to have declared nondischargeable. Presumably KWF was operating under the impression that the Carroll County Action resulted in some sort of "debt," an argument already rejected by this Court. That said, the Court will still examine the bankruptcy court's ruling on the summary judgment motion filed in the adversary proceeding by Rick King.

In Count I of the adversary complaint, KWF asserted claims of breach of fiduciary duty and/or breach of employment contract. In this count, KWF alleges that as a key employee of KWF, Rick King was prohibited by the employee handbook from engaging in outside employment, and, as an officer of KWF, had a duty to act with utmost good faith, loyalty and integrity. KWF alleges that Rick King breached his contract and his fiduciary duties by openly competing with KWF, by stealing KWF's customers, and by promoting his own personal interest at KWF's expense, all of which constituted false pretenses, a false representation, or actual fraud under 11 U.S.C. § 523(a)(2); fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny under 11 U.S.C. § 523(a)(4); and willful and malicious injury under 11 U.S.C. § 523(a)(6). (Adv. Compl. ¶¶ 34-44.)

In Count II of the adversary complaint (misappropriation of trade secrets), KWF alleges that Rick King learned KWF's specific processes, formularies and techniques by being in a position of trust and, as Vice-President of KWF, had access to customer lists and pricing information. KWF alleges that, while still employed by KWF, Rick King misappropriated these

11

trade secrets so as to directly compete with KWF, causing a loss of business to KWF (in particular, the loss of PCC Airfoils business), all to the benefit of ANJ. KWF alleges that these actions constituted false pretenses, a false representation, or actual fraud under 11 U.S.C. § 523(a)(2); fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny under 11 U.S.C. § 523(a)(4); and willful and malicious injury under 11 U.S.C. § 523(a)(6). (Adv. Compl. ¶¶ 47-56.)

In Count III of the adversary complaint (tortious interference with business relations), KWF alleges that Rick King, while employed by KWF, intentionally induced PCC Airfoils to discontinue its ongoing business relationship with KWF and to give its business to ANJ, which constituted false pretenses, a false representation, or actual fraud under 11 U.S.C. § 523(a)(2); fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny under 11 U.S.C. § 523(a)(4); and willful and malicious injury under 11 U.S.C. § 523(a)(6). (Adv. Compl. ¶¶ 59-67.)

In Count IV (conversion), KWF alleges that Rick King diverted the proceeds from the sale of scrap metal and scrap metal dust, which are byproducts of welding and fabricating, to himself and his wife, without the permission of the then-owners of KWF, Dick and Jane King, which constituted false pretenses, a false representation, or actual fraud under 11 U.S.C. § 523(a)(2); fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny under 11 U.S.C. § 523(a)(4); and willful and malicious injury under 11 U.S.C. § 523(a)(6). (Adv. Compl. ¶¶ 70-77.)

In Count V of the adversary complaint (fraud), KWF alleges that, from at least July 2005 to October 2005, Rick King concealed that, through his own business ANJ, he was directly competing with KWF while still employed by KWF. It further alleges that Rick King

concealed that he was converting proceeds from the sale of KWF's property. KWF alleges that Rick King intentionally misrepresented that he was acting on KWF's behalf, all while acting in furtherance of his own competing business. Finally, KWF alleges that it was justified in relying on Rick King's non-disclosure because he was a 25-year employee and the son of the owners. KWF alleges that these actions constituted false pretenses, a false representation, or actual fraud under 11 U.S.C. § 523(a)(2); fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny under 11 U.S.C. § 523(a)(4); and willful and malicious injury under 11 U.S.C. § 523(a)(6). (Adv. Compl. ¶¶ 80-90.)[9]

KWF argues that the bankruptcy court went beyond the contours of § 523(a)(2), (a)(4), and (a)(6) in ruling on summary judgment and decided issues not relevant to the question of dischargeability.

Section 523(a)(2) provides that a discharge in bankruptcy "does not discharge an individual debtor from any debt . . . for money . . . to the extent obtained by (A) false pretenses, a false representation, or actual fraud[.]" 11 U.S.C. § 523(a)(2) To exclude a debt from discharge under this provision, a creditor must establish four things:

(1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth;
(2) the debtor intended to deceive the creditor;
(3) the creditor justifiably relied on the false representation; and
(4) its reliance was the proximate cause of loss.

*In re Grenier*, No. 10-2242, 2012 WL 265940, at *1-2 (6th Cir. Jan. 31, 2012) (quoting *In re Rembert,* 141 F.3d 277, 280–81 (6th Cir.1998)). KWF argues that the bankruptcy court was required to determine whether KWF had demonstrated that the debtor had engaged in actual

---

[9] The adversary complaint also contained a sixth count that sought to recover attorney's fees.

fraud.[10] Since Rick King, the debtor, was an employee and officer of KWF, he held a position of trust. In addition, according to KWF, Rick King was under a contract not to compete. KWF argues that Rick King exploited his position of trust to gain insider information regarding KWF's bids and job proposals and used it to his own benefit and to KWF's harm. KWF argues that the bankruptcy court wrongly determined that KWF had failed to show actual fraud on the part of Rick King within the meaning of the bankruptcy code. This, according to KWF, "directly conflicts with a prior decision on the same facts[, i.e., the decision in the Carroll County Action]." (Appellant's Brief at 15.)

Section 523(a)(4) provides that a discharge in bankruptcy "does not discharge an individual debtor from any debt . . . for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]"[11] "This rule is limited to a trust relationship arising from the placement of a specific res in the hands of the debtor." *Astro Bldg. Supplies, Inc. v. Slavik*, 443 F. App'x 993 (6th Cir. 2011) (citing *R.E. America, Inc v. Garver (In re Garver)*, 116 F.3d 176, 179 (6th Cir. 1997)); *see also Patel v. Shamrock Floorcovering Servs., Inc. (In re Patel)*, 565 F.3d 963, 967 (6th Cir. 2009) ("This exception for 'defalcation while acting in a fiduciary capacity' follows from Congress's desire to protect trust relationships: when the bankrupt is a trustee and the creditor a trust beneficiary, §523(a)(4) points the needle away from discharge[.]"); *Bd. of Trs. v. Bucci (In re Bucci)*, 493 F.3d 635, 639 (6th Cir. 2007) (the defalcation provision of § 523(a)(4) "does not apply to someone who merely fails to meet an obligation under a common law fiduciary relationship") (citing *In re Garver*, 116 F.3d at 179).

---

[10] KWF makes no argument with respect to false pretenses or false representation. Therefore, the Court need not address these elements of the statute.

[11] "Defalcation" is defined as: "1. embezzlement. 2. Loosely, the failure to meet an obligation; a nonfraudulent default. 3. *Archaic*. A deduction; a setoff." BLACK'S LAW DICTIONARY (9TH ed. 2009).

14

> A debt is non-dischargeable as the result of defalcation when a preponderance of the evidence establishes: (1) a pre-existing fiduciary relationship, (2) a breach of that relationship, and (3) resulting loss. *Bd. of Trustees v. Bucci (In re Bucci),* 493 F.3d 635, 642 (6th Cir. 2007). In *Davis [v. Aetna Acceptance Co.*, 293 U.S. 328 (1934)], the Supreme Court instructed that the term "fiduciary capacity" is narrower here than it is in some other contexts: section 523(a)(4) covers only "express" or "technical trusts" and not trusts arising out of "the very act of wrongdoing." 293 U.S. at 333, 55 S.Ct. 151. These "constructive trusts," which arise *ex maleficio* (at the time the wrong is done), do not satisfy the "fiduciary capacity" requirement because the debtor was not "a trustee before the wrong." *Id.*

*In re Patel*, 565 F.3d at 968. Further, "[a] creditor proves embezzlement by showing that he entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud." *Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1173 (6th Cir. 1996). KWF argues that it had already been determined in the State Court Action that Rick King had converted KWF's property and, under the bankruptcy code, committed either embezzlement or larceny. The bankruptcy court, according to KWF, "disagreed and made specific findings of fact not relevant to the issue of dischargeability." (Appellant's Brief at 16.) KWF does not identify which "specific findings of fact" it challenges.

Finally, § 523(a)(6) provides that a discharge in bankruptcy "does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity[.]" "[O]nly acts done with the intent to cause injury-- and not merely acts done intentionally--rise to the level of willful and malicious injury for purposes of satisfying § 523(a)(6)." *Kennedy v. Mustaine (In re Kennedy)*, 249 F.3d 576, 581 (6th Cir. 2001) (citing *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998)). KWF argues that the facts of the case demonstrate that Rick King "knowingly set out to destroy [KWF,] . . . knowingly took business from [KWF] and also skimmed the sales of the scrap metal to his wife[,] [and] . . . systematically began to divert business to himself rather than [KWF]." (Appellant's Brief at 17.)

15

KWF asserts that the bankruptcy court's determination that these actions were not willful and malicious was "not relevant to the question of dischargeability and should be reversed as unnecessary to the ultimate question." (*Id.*).

Critical to KWF's arguments under all three subsections of § 523 is its assertion that, although Congress has vested bankruptcy courts with jurisdiction to determine the dischargeability of debts, "it does not mean that every last fact issue bearing on dischargeability must be re-litigated, re-tried, and again decided when there has been a prior determination of the same facts by a court of competent jurisdiction." (Appellant's Brief at 13, citing cases.) KWF is of the view that the bankruptcy court was required to credit the ruling in the State Court Action, even though that ruling had never been reduced to a final judgment. The Court has already rejected that argument.

Because the Carroll County Action had no collateral estoppel effect, the bankruptcy court correctly stated that it was required to "decide[] the motion for summary judgment beginning with a blank slate and solely with the record provided [to the bankruptcy court]." (7/14/11 Bankr. Opinion, at 5.)[12] The bankruptcy court's opinion correctly addresses the "unusual status of the case" as follows:

---

[12] Similarly, when this Court reviews the bankruptcy court's decision *de novo*, it must rely on the record as designated by the parties:

| | | |
|---|---|---|
| Doc. No. 1 | -- | Adversary Complaint to Determine Dischargeability |
| Doc. No. 6 | -- | Initial Pretrial and Case Management Order |
| Doc. No. 12 | -- | Motion to Abstain as to Certain Claims, Hold Case in Abeyance Pending Resolution of State Court Litigation and to Lift Stay to Permit State Court Litigation to Proceed |
| Doc. No. 14 | -- | Scheduling Order Following Hearing |
| Doc. No. 20 | -- | Restated Objection and Response of Rick King to Abstention Motion With Amended Certificate of Service Annexed |
| Doc. No. 21 | -- | Response in Support of Motion to Abstain |
| Doc. No. 22 | -- | Rick King's Request for a Hearing on Plaintiff's Abstention Motion |
| Doc. No. 23 | -- | Order Granting Motion for Hearing |
| Doc. No. 27 | -- | Defendant's Motion for Summary Judgment |
| Doc. No. 28 | -- | Memorandum of Opinion |

This case arises in bankruptcy court as a dischargability [sic] complaint based upon facts that formed the basis of state court litigation that was not completed. In that case, summary judgment was granted to [KWF], in part, and denied as to all parties as to the other counts.

Two operative series of facts drive [KWF]'s complaint. First, Rick King sold company scrap and diverted the proceeds to his wife. Second, Rick King established a competitor company, thereby diverting work from [KWF].

Defendant filed affidavits from Rick King and his mother, Jane King, who was a 50% shareholder of [KWF] at the time of the scrap transactions. Both affidavits stated that Rick King was permitted to act in this manner with regard to the scrap. [KWF] placed nothing in the record on this point except the decision of the state court, which is not entitled to preclusive effect. The state court may have had something other than the affidavits of Rick King and Jane King, but this court does not. The state court also may not have had identical affidavits from Rick King and Jane King, but it does not matter. What matters is the record and the argument in *this* court.

As to the counts relating to Rick King stealing business from the plaintiff, Rick King again relied on his own affidavit. The affidavit states that his father returned to the business and fired or drove out so many employees that there were swaths of [KWF]'s business that it no longer wanted or was no longer capable of performing. [KWF] has not directly countered this argument. [KWF]'s argument is directed at pointing out that Rick King was competing with [KWF], essentially stealing business by rigging quotes and the like, and arguing that Rick King had a hidden agenda of destroying [KWF]. This does not respond to the assertion set forth as a fact by virtue of its inclusion in an affidavit, that the transactions were work that [KWF] either did not want or was incapable of performing.

The court has scoured the materials filed as docket item 35 in support of [KWF]'s opposition to summary judgment, some or all of which may not be submitted in a manner to be part of the legally recognized record. Putting this problem to the side, the court can create an argument from the attached portions of Rick King's deposition that could save a portion of the causes of action. The

---

Doc. No. 33 -- Re-Filed Affidavits of Glenn Richard King, Jr. and Florence Jane King, Plus Exhibits in Support of Rick King's Summary Judgment Motion
Doc. No. 35 -- Exhibits in Support of Opposition to Motion for Summary Judgment
Doc. No. 36 -- Response in Opposition to Debtor's Motion for Summary Judgment
Doc. No. 38 -- Memorandum of Opinion

In addition to the above, appellee Rick King designated the complete dockets in both the adversary proceeding and the underlying bankruptcy proceeding. He also designated "The Claims Register in Appellee-Defendant's bankruptcy case, Case No. 10-63468, or a certified copy thereof." However, there is no claims register in the bankruptcy case.

> court carefully read those parts of [KWF]'s brief (page 5 and page 12) citing Rick King's deposition and no such argument is made.
>
> First, as previously noted, courts are not tasked with combing the record, and even much less so combing the record to make arguments not raised by the parties. Second, the court would be forcing tactical choices on [KWF] as such an argument would result in a much smaller cause of action for recovery. Third, this would be fundamentally unfair to Rick King, who would have no notice of the argument or an opportunity to argue against it.
>
> On a completely different note, the status of the case is unusual in that neither side ever engaged in a count by count analysis consolidating law and facts. There are statements of fact, statements of the case, sections about applicable federal law and so on, but at no point does either brief engage in a count by count argument harmonizing the law with the facts to express the party's argument. Similarly, the parties seldom join at the intersection of an argument. This opinion reflects the ensuing struggle for the court.

(7/14/11 Bankr. Opinion at 5-6, emphasis in original.) This Court finds the above description of the status of the case compelling and correct.[13]

Although finding little guidance in the summary judgment briefs of the parties,[14] the bankruptcy court nonetheless proceeded to address separately each count of the adversary complaint in light of the dischargeability statute. This Court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law de novo.

---

[13] The Court also notes that, in their briefing here, as before the bankruptcy court, the parties are less than specific. Appellant KWF raises three issues and sets forth law in support of its position on each, but never specifically points to the alleged error in the bankruptcy opinion as it relates to the record. Appellee Rick King does not specifically address any of the three arguments raised by KWF, instead simply rearguing its summary judgment motion. In the reply brief, KWF, perhaps rightly, merely attacks "the non-legal and non-relevant information" in the appellee's brief. (Appellee's Reply Brief at 4.) These briefs offered very little assistance to this Court as it conducted its de novo review of the bankruptcy court's ruling.

[14] The *only* materials before the bankruptcy court by way of a "record" from the state court was the state court's ruling dated April 18, 2008. (Adv. Compl., Exh. A.) It was not, however, a certified copy of the ruling. The bankruptcy court also had the affidavits of Rick King and Jane King (Adv. Doc. No. 33); however, there is no indication whether these affidavits were part of the state court record or were simply created for the adversary proceeding. The date on the two affidavits (March 12, 2008) suggests that they might have been part of the state court record, but, as noted even by the bankruptcy court, no one supplied that information, nor were the affidavits certified as part of the state court record.

The bankruptcy court made two fundamental findings of fact from which it drew legal conclusions regarding whether KWF had met its burden of establishing all the elements of each of its claims: "that Rick King formed [ANJ] to perform work that [KWF] was unwilling or unable to perform and that he was authorized to divert the scrap metal proceeds." (7/14/11 Bankr. Opinion at 7.)

Based on these two primary fact-findings, the bankruptcy court concluded as follows: with respect to Count I of the adversary complaint, that Rick King was not in violation of his fiduciary duty nor in breach of any contract or covenant not to compete because he was authorized to take the actions he had taken; with respect to Count II, that KWF had no trade secrets and, therefore, could not establish the element of "actual loss"; with respect to Count III, that KWF had failed to prove any injury or that Rick King acted with the purpose or intent to interfere or injure; with respect to Count IV, that there was no conversion because Rick King was authorized to take the actions he had taken; and with respect to Count V, that Rick King had no fraudulent intent because ANJ was only doing the business that KWF was unwilling or unable to do. The bankruptcy court further concluded, as to all counts, that Rick King had no fraudulent intent under § 523(a)(2); did not engage in fraud, defalcation, embezzlement or larceny under § 523(a)(4); and, had no malicious motives under § 523(a)(6).

KWF criticizes the bankruptcy court for "decid[ing] disputed issues of fact, analyz[ing] facts in the light most favorable to the Debtor and ignor[ing] a previous decision on the facts of this matter." (Appellant's Brief at 29.) However, the bankruptcy court correctly noted that any fact findings in the Carroll County Action have no preclusive effect and, "material that may have been included, and cited to, in the state court was not brought into the record or cited from the record in this matter. Therefore, for the purpose of this motion, the court must accept

19

the version of facts in the record." (7/14/11 Bankr. Opinion at 7.) The bankruptcy court also correctly noted that, because Rick King's and Jane King's affidavits were unopposed, KWF had failed to meet its burden to rebut the facts set forth therein. Perhaps KWF made the strategic decision (to its detriment) to only rely on what it hoped was the preclusive effect of the Carroll County court's partial summary judgment ruling, rather than submit evidentiary materials for the bankruptcy court's consideration in this case.[15] Whatever the case may be, this Court has only *this* record to rely upon, a record that contains dispositive, unopposed facts.

Having independently reviewed the scant record that was before the bankruptcy court, this Court finds no error in the July 14, 2011 ruling on summary judgment dismissing the adversary action.

### III. CONCLUSION

For the reasons set forth herein, the bankruptcy court's order of July 14, 2011 is **AFFIRMED** and this case is **DISMISSED**.

**IT IS SO ORDERED**.

Dated: August 27, 2012

                                        **HONORABLE SARA LIOI**
                                        **UNITED STATES DISTRICT JUDGE**

---

[15] *See* n. 14, *supra*.